MOORE, J.
h Joyce Lafitte-Nesom appeals a judgment that rejected her claim for workers’ compensation benefits arising from a slip- and-fall in the parking lot of her employer, Christus Schumpert Highland. For the reasons expressed, we affirm.

*1102
Factual Background

Ms. Nesom was employed as a nursing house supervisor at the Christus Schum-pert Highland Hospital, on Bert Kouns in Shreveport; her duties included coordinating, nursing services and taking calls from those who, were unable to come to work. Her normal working, hours were from 4:00 pm until midnight. Although she worked in Shreveport, she lived in Mansfield and commuted daily.
. She reported to Christus Schumpert as usual on the afternoon of February 11, 2014, but then an ice storm rolled in. She testified that many nurses called in unable to report to work because of. hazardous road conditions, and the hospital went on diversion, not accepting patients. Fortunately, the next house supervisor, Ahleeka Cummings, arrived to relieve Ms. Nesom shortly after midnight, but advised her that the parking lot where Ms. Nesom had parked was icy. Ms. Nesom called hospital security but was told “we don’t have much sand” to treat the parking lot.
Ms. Nesom testified that she worked until 1:40 am and clocked out but was unable to leave because police had closed the roads to Mansfield. She decided to stay at the hospital until conditions improved, first lying on a couch in a waiting room and then trying to sleep in an unoccupied patient room, but she never really fell asleep. She got up at 5:00 am, went to the [2nursing director’s office and started answering the phone, her normal job duty, but did not clock in. The next house supervisor, Tamisha Griffin, arrived to start a shift shortly after 8:00 am. Ms. Griffin said she had driven in from Mansfield, but strongly advised Ms. Nesom not to get on the roads.
' Ms. Cummings offered to let Ms. Nesom stay at her house, in Bossier City, until weather conditions improved; Ms. Nesom agreed. They exited the hospital from the rear and walked toward parking lot “H,” where both women had parked. Ms. Cummings described the parking lot as “completely icy.” However, rather than going straight to Ms. Cummings’s four-wheel drive vehicle, Ms. Nesom detoured over to her own car to drop off a duffel bag she was carrying. She reached her car, püt the bag in and shut the door, but when she turned to go to Ms. Cummings’s car, she slipped on the ice and fell, breaking her leg and sustaining other injuries.

Procedural History

Fifteen days later, Ms. Nesom filed the instant disputed claim seeking wage benefits, disability status and her choice of physician, with penalties and attorney fees. Christus' Schumpert filed general denials and a number of exceptions which are no longer at issue. In July 2014, the Workers’ Compensation Judge (“WCJ”) granted Ms. Nesom’s unopposed motion to bifurcate trial, limiting the first trial to the issue of whéther the injury was work-related, under La. R.S. 23:1031 A.
Blue Cross Blue Shield, Ms. Nesom’s insurer, intervened alleging that it had paid part of her medical expenses, $29,436.02, pursuant to its policy and was entitled to reimbursement under La. R.S. 23:1205. Blue | sCross aligned itself with Ms. Nesom in the ensuing litigation.
Trial was held on December 12, 2014, before WCJ Patrick Robinson. Ms. Ne-som testified as outlined above. The only other live witness was Mary Virginia De-sunte, director of nursing operations and resources, and Ms. Nesom’s direct supervisor. Although she was not at the hospital the night of the ice storm, she testified that supervisors were not short-handed that evening and that Ms. Nesom was not authorized to work past midnight. Ms. Desunte was also unaware that Ms. Nesom had worked from 5:00-8:00 am on Febru *1103 ary 12, as Ms. Nesom never requested payment for that time. A third witness, Ms. Cummings, testified by deposition. She confirmed that the icy parking lot was difficult to navigate and that she .offered to let Ms. Nesom stay at her house, but she did not see her fall.
Much of the discussion at trial dwelt on Ms. Nesom’s decision to park in lot “H” that day. According to memos issued in September 2013 (some 4½ months before this incident), associates were to use lots “H” and “I” during normal business hours, with compliance to be monitored by security. Both Ms. Nesom and Ms. Cummings testified they were “required” to park in “H” or “I,” but access was not restricted: the general public also could use those lots. Ms. Desunte, the supervisor, agreed, adding that Ms. Nesom also could have parked in lot “D.”
After the parties submitted the case, WCJ Robinson was appointed director of the Louisiana OWC. Ms. Nesom’s case was assigned to an ad hoc WCJ. On May 13, 2015, the ad hoc WCJ rendered reasons for judgment, outlining the facts and finding that the issue was governed by Mundy v. Department of Health & Human Res., 593 So.2d 346 (La.1992), which delineated the “arising out of’ and “in the course of’ requirements for coverage under R.S. 23:1031 A and rejected the “threshold doctrine” where there was no defect in the employer’s premises.[1] The WCJ distinguished Mitchell v. Brookshire Grocery Co., 26,755 (La.App. 2 Cir. 4/5/95), 653 So.2d 202, writ denied, 95-1115 (La.6/16/95), 655 So.2d 339, and other eases as involving premises defects to which employees were at greater risk than the general public. Finding that Ms. Ne-som had “departed her employment after 8:00 am,” was no longer serving her employer’s purpose, and slipped in an area that was equally accessible to employees and to the general public, the WCJ concluded the injury was not covered by R.S. 23:1031 A.- The WCJ rendered judgment dismissing the claim, and this appeal followed.

The Parties’Positions

By one assignment of error, Ms. Nesom urges the .WCJ erred in dismissing her demand for workers’ compensation benefits. She first contends this was legal error, warranting de novo review of the record. On the merits, she contends the conditions or obligations of the employment caused her to be at the place and time of the accident, thus .satisfying the “arising out of’ prong of § 1031 A; in the act of leaving, she was entitled to a reasonable period while still on the employer’s premises (the “threshold | ^doctrine”), thus satisfying the “in the course of’ prong. Mitchell v. Brookshire Grocery Co., supra; Duncan v. Southern Cent. Bell Tel. Co., 554 So.2d 214 (La.App. 2 Cir.1989), writ denied, 559 So.2d 125 (1990). She also argues that owing to the inclement weather, icy conditions, road closures and lack of staffing, she had worked additional time and was indeed serving Christus Sehum-pert’s business as well as her own interests. Finally, she contends Mundy v. Dept. of Health, supra, is inapplicable because it was a tort case in which the employer was asserting the exclusive rem *1104 edy of workers’ compensation, and that cases like May v. Sisters of Charity of the Incarnate Word, 26,490 (La.App. 2 Cir. 3/1/95), 651 So.2d 375, writ denied, 95-0804 (La.5/5/95), 654 So.2d 329, are inapplicable as the claimants therein were truly off the premises. She concludes the judgment should be reversed and the case remanded for the second half of the bifurcated trial.
Blue Cross has filed a brief adopting Ms. Nesom’s arguments.
Christus Schumpert responds that the case is subject to manifest error review, not de novo, and urges that the ad hoc WCJ did not actually make any credibility determinations. It submits that the claimant must meet both the “arising out of’ and “in the course of’ prongs of § 1031 A, and whether she has succeeded is a “common sense practical question whether the employee’s injury bears some significant relationship to the employer’s business operation.” Raybol v. Louisiana State Univ., 520 So.2d 724, 45 Ed. L. Rep. 886 (La.1988). It urges the WCJ properly followed Mundy to find that thé parking lot where Ms. Nesom slipped posed no greater risk to |fiher as an employee than to the general public and, thus, the risk was not in the course of her employment. It asks the court to affirm.

Applicable Law

An employee is entitled to workers’ compensation benefits if he “receives personal injury by accident arising out of and in the course of his employment!.]” La. R.S. 23:1031 A. An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during work hours, either on, the employer’s premises or at other places where employment activities take place. McLin v. Industrial Specialty Contractors Inc., 2002-1539 (La.7/2/03), 851 So.2d 1135; Mundy v. Dept. of Health, supra. While coverage has been extended in some cases to include accidents during times for rest, lunch periods or before and after work on the employer’s' premises, or to include accidents at places where employment duties are performed off the employer’s premises, the principal criteria for determining course of employment, are time, place and employment activity. Id.
An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Mundy v. Dept. of Health, supra. The “arising out of’ requirement depends on the character or source of the risk that gave rise to the injury and on the relationship of the risk to the nature of the employment; the objective of the “arising out of’ inquiry is to separate accidents attributable to employment risks, which are covered, from |7accidents attributable to personal risks, which are not. Guillory v. Interstate Gas, supra; Mundy v. Dept. of Health, supra.
The dual requirements, in the course of and arising out of employment, are not separate and unrelated concepts; the courts have treated them as mutually interdependent in determining the relationship of the injury to the employment. Mundy v. Dept. of Health, supra; Obien v. Mitcham Peach Farms LLC, 43,637 (La.App. 2 Cir. 10/29/08), 997 So.2d 670. In a close case, a strong showing of course of employment will counterbalance a relatively weak showing of arising out of employment. Id,
Factual findings in workers’ compensation cases are subject to manifest error review. Marange v. Custom Metal Fabricators Inc., 2011-2678 (La.7/2/12), 93 So.3d 1253; Dean v. Southmark Const., 2003- *1105 1051 (La.7/6/04), 879 So.2d 112. The manifest error standard applies even when a successor judge rules solely on the basis of a transcript. Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; Haile v. City of Monroe, 31,315 (La.App. 2 Cir. 12/14/98), 722 So.2d 1192.[2]

Discussion

On close review, the evidence makes only a weak showing of the “in the course of’ prong of R.S. 23:1031 A. Ms. Nesom was obviously not actively engaged in performing her employment duties when she slipped and fell; she had finished her work and was attending to the personal | ^business of going home (or at least to a coworker’s house) for the night.
The jurisprudence recognizes that “in the course of’ may include periods of time before and after work on the employer’s premises. Mundy v. Dept. of Health, supra; Tuminello v. Willis Knighton Med. Ctr., 597 So.2d 1089 (La.App. 2 Cir.), writ denied, 600 So.2d 684 (1992). The testimony differed, in that Ms. Desunte thought Ms. Nesom clocked out at 1:40 am and did no further work, but the WCJ accepted Ms. Nesom’s account that she did not quit working until 8 am. We perceive no manifest error in the WCJ’s decision to credit Ms. Nesom’s firsthand account over Ms. Desunte’s recollection of phone calls and emails. Since the accident occurred shortly after she finished work and on the employer’s premises, though not while Ms. Nesom was engaged in employment duties, the evidence makes a weak showing of “in the course of.”
The weak showing of “in the course of’ may be offset by a strong showing of “arising out of.” Mundy v. Dept. of Health, supra; Obien v. Mitcham Peach Farms LLC, supra. However, the evidence makes an even weaker showing of this prong of the test. The slip and fall occurred in one of several parking lots designated for employees but open to the general public. In short, the risk of injury from walking in parking lot “H” was no greater for Ms. Nesom than for other members of the public using the hospital. Guillory v. Interstate Gas Station, supra; Hughes v. Olive Garden Italian Rest., 31,939 (La.App. 2 Cir. 5/5/99), 731 So.2d 1076. This court has recognized that an employee, who uses the premises daily, is at much greater risk from a defect in the employer’s parking lot than a customer,J^who might use the premises only occasionally. Mitchell v. Brookshire Grocery Co., supra; Tuminello v. Willis Knighton, supra. It is well settled that the temporary presence of a foreign substance is not, in and of itself, a defect in the premises. Adams v. Louisiana State Univ., 44,627 (La.App. 2 Cir. 8/19/09), 19 So.3d 512, writ denied, 2009-2056 (La.11/20/09), 25 So.3d 798, and citations therein. Ice on a paved surface is not a defect in the paved surface. Morris v. State, Dept. of Transp., 94-2545 (La.App. 1 Cir. 10/6/95), 664 So.2d 1192, writ denied, 95-2982 (La.2/9/96), 667 So.2d 537. Although the hazard of slipping on ice is evident, we cannot disagree with the WCJ’s reasoning that the unusual and short-lived phenomenon of an ice storm in Louisiana is not the kind of condition that subjects an employee like Ms. Nesom to any greater risk than the general public. In short, this showing of “arising out of’ is *1106 far too weak to offset the weak showing of “in the course of.”
Finally, we have considered the “common sense practical question whether the employee’s injury bears some significant relationship to the employer’s business operation.” Raybol v. La. State Univ., supra; Tarver v. Energy Drilling Co., 26,233 (La.App. 2 Cir. 10/26/94), 645 So.2d 976. Ms. Nesom showed a commendable dedication to her work by staying after her shift ended at .midnight, staying on the premises to get some minimal rest, and then working additional hours 'without clocking in or getting the required authorization. However, the evidence does not support a finding that her accident arose out of and in the course of her employment, or that she’was somehow serving Christus Schum-pert’s business operation by |inplacing the duffel bag in her car before leaving with Ms. Cummings. On this record, we are constrained to find no manifest error in the'WCJ’s conclusion that the accident was not compensable' under R.S. 23:1031 A. The WCJ- did not err in dismissing the claim.

Conclusion

For the reasons expressed, the judgment is affirmed. The claimant, Joyce Lafitte-Nesom, is to pay all costs.
This opinion is designated for publication pursuant to La. R.S. 23:1310.5 F.
AFFIRMED.

. The ad hoc WCJ consistently stated the issue was whether Ms. Nesom was injured in the "course and scope of” her employment. This is, of course, not accurate, as the test of R.S. 23:1031 A is "arising out of and in the course of” employment, a standard closely related to (but not to be confused with) the somewhat narrower tort standard for imposing vicarious liability on an employer for his employee’s torts, La. C.C. art. 2320, See L.J. Earnest Const. v. Cox, 30,506 (La.App. 2 Cir. 5/13/98), 714 So.2d 150; H. Alston Johnson, 13 La. Civ. L. Treatise (Workers' Comp. Law & Practice), § 144 (5 ed. ©2010).

. Dictum of this court in Johnson v. Johnson Controls Inc., 38,495 (La.App. 2 Cir. 5/12/04), 873 So.2d 923, suggesting that less deference is due when a trial judge did not see and hear the witnesses at trial, should not be construed as a statement of law. We cited Smith v. West Calcasieu-Cameron Hosp., supra, and other cases that predated the 1974 Constitution and the supreme court’s holding in Shephard v. Scheeler, supra, but held that no credibility calls were implicated in Johnson.