JUDE G. GRAVOIS, Judge.
|sPIaintiff, Antonio Stewart, appeals a trial court judgment that found defendant, Boh Bros. Construction Company, L.L.C. (“Boh Bros.”), to be his statutory employer, thus limiting his remedy against Boh Bros, to workers’ compensation benefits, rather than potential tort recovery. Inter-venor, Lemic Insurance Company (“Lemic”), the workers’ compensation carrier of plaintiffs direct employer, Cabal Industries (“Cabal”), answered the appeal, also praying for reversal of the judgment and reinstatement of its intervention claim against Boh Bros.
On appeal, plaintiff argues that a contract that Boh Bros, entered into with Cabal, purporting to make Boh Bros, a statutory employer of Cabal’s direct employees, is unenforceable because Boh Bros, did not unconditionally accept, implicitly or explicitly, the obligations of a statutory employer, and therefore cannot obtain the benefit of tort immunity granted to a statutory employer. Plaintiff also argues that the contract purporting to make Boh Bros, plaintiffs statutory employer is unenforceable because the indemnity provision contained |4therein attempts to shield Boh Bros, from both tort liability and workers’ compensation liability, which is not only prohibited by La. R.S. 23:1033, but is also contrary to public policy. Lastly, plaintiff argues that he was not “performing any work or providing any services under [the Boh Bros./Cabal] agreement” at the time he was injured, which plaintiff alleges is required under the Boh Bros./Cabal contract at issue, and thus, Boh Bros, is not entitled to tort immunity.
For the following reasons, we find plaintiffs assignments of error to be without merit and accordingly affirm the judgment of the trial court finding Boh Bros, to be plaintiffs statutory employer. Correspondingly, Lemic’s answer to this appeal is also denied.

FACTS AND PROCEDURAL HISTORY

On March 25, 2005, the date of his injury, plaintiff was employed as a cement finisher with Cabal, a contractor who had entered into a subcontract with Boh Bros., the general contractor, to furnish labor for a federal project involving the refurbishing of runways at New Orleans International Airport. Plaintiff was injured while he was riding in the bed of a Cabal pickup truck while being transported from one Boh Bros, work location at the airport to another. While proceeding from one sec *401 tion of the runway to another, the pickup truck plaintiff was riding in was struck by another vehicle owned by Boh Bros, and being driven by a Boh Bros, employee.[1] Immediately prior to getting in the bed of the truck, plaintiff had finished eating lunch and had been directed by one of his supervisors to load equipment into the bed of the pickup truck for later use by him and his co-workers at a Boh Bros, work location on the runway. As the Cabal pickup truck was proceeding to the Boh Bros, work location, it was struck on the front corner by the Boh Bros, vehicle.
[^Plaintiff filed suit against Boh Bros, in 2006, alleging therein that he sustained injuries in the accident for which he received medical treatment over an extended period of time. Prior to filing suit against Boh Bros., plaintiff made a workers’ compensation claim against Cabal, stipulating therein that he was in the course and scope of his employment at the time of his injury. Plaintiff collected indemnity and medical benefits pursuant to his workers’ compensation claim.
The matter proceeded to a bench trial on May 14, 2012.[2] In lieu of closing arguments, the trial court accepted post-trial memoranda from the parties. On July 11, 2012, the trial court issued its ruling, finding that plaintiff was injured in the course and scope of his employment, and that Boh Bros, was his statutory employer and was thus immune from tort liability. This appeal followed.

FIRST AND THIRD ASSIGNMENTS OF ERROR

Interpretation of pertinent provisions of the contract between Boh Bros, and Cabal

Plaintiff argues that the contract between Boh Bros, and Cabal, purporting to make Boh Bros, the statutory employer of all of Cabal’s direct employees, is unenforceable because Boh Bros, did not unconditionally accept, implicitly or explicitly, the obligations of a statutory employer, and therefore cannot obtain the corresponding benefit of tort immunity as a statutory employer. Plaintiff also argues that the contract is unenforceable because the indemnity provision contained in the contract attempts to shield Boh Bros, from both tort liability and workers’ compensation liability, which is both prohibited by La. R.S. 23:1033 and contrary to public policy. Plaintiff cites the case of Prejean v. Maintenance \ Enterprises, Inc., 06-0364 (La.App. 4 Cir. 3/25/09), 8 So.3d 766, in support of its argument. In Prejean, the court interpreted language in the contract between the direct employer and the purported statutory employer and found that the contract impermissibly restricted the injured worker’s ability to seek workers’ compensation benefits directly from the statutory employer.
Under the Louisiana Workers’ Compensation Act (“the Act”), an employer is liable for compensation benefits to an employee who is injured as a result of an accident arising out of and in the course of *402 his employment. La. R.S. 23:1031. Generally, the Act provides for the employee’s exclusive rights and remedies against the employer for such injury. La. R.S. 23:1032. The Act applies both to a direct employer/employee relationship, as well as to a statutory employer/employee relationship. Mitchell v. So. Scrap Recycling, L.L.C., 11-2201 (La.App. 1 Cir. 6/8/12), 93 So.3d 754, 757, writ denied, 12-1502 (La.10/12/12), 99 So.3d 47. The ultimate determination of whether a principal is a statutory employer entitled to immunity is a question of law for the court to decide. Id.
The Legislature has effectively determined that the liability of the principal, who is a statutory employer, and the direct employer is solidary as to the injured worker. La. C.C. arts. 1786 and 1790, and La. R.S. 23:1061; Bowens v. General Motors Corp., 608 So.2d 999, 1003 (La.1992). The injured worker is the obli-gee to whom the obligation of benefits is immediately and unconditionally owed by either or both. Neither a direct employer nor a statutory employer may, as to the injured worker, contract away its solidary obligation: “No contract, rule, regulation, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.” La. R.S. 23:1033. However, the statutory employer and the direct employer are not prohibited from contracting as between themselves rights of contribution or | ./indemnification. See, e.g., La. R.S. 23:1031(B) and 1063(A). Prejean, supra; Mitchell v. So. Scrap Recycling, L.L.C., supra.
Plaintiff claims that the contract between Boh Bros, and Cabal contains provisions that, like the contract in Preje-an, conditioned the payment of workers’ compensation benefits on a suspensive condition or otherwise shields Boh Bros, directly from workers’ compensation liability to injured workers. The trial court found, however, that the provision in question contained in the Boh Bros./Cabal contract was a permissible allocation of rights of contribution and indemnity as between Boh Bros, and Cabal, not the impermissible conditioning of payment of benefits to injured workers as was found in Prejean.
The complained-of language in the Pre-jean contract reads as follows:
5.5 Statutory Employer
This contract recognizes that Company [Murphy Oil] shall be considered the statutory employer of Contractor’s [Maintenance Enterprises’] employees and its subcontractors who provide work or services under this Contract in accordance with Louisiana R.5. [sic] 23:1031 or R.5. [sic] 23;1061 [sic]. Thus Company is to be granted the exclusive remedy protection of Louisiana R.S. 23:1032 and it shall be liable to pay compensation benefits if the immediate employer, Contractor or its subcontractors as applicable, is unable to meet their financial obligation under the Louisiana Workers’ Compensation Statute for work or service that is performed under this Agreement. The parties agree that the recognition of the Statutory Employer status is made pursuant to R.S. 23:1061 of the Louisiana Workers’ Compensation statute and that Company is not the actual employer of any of the employees of Contractor or any of its subcontractor [sic]. Further, that the company has no control or involvement in the hiring, firing, or direct supervision or direction of any such employees. The work to be performed under this Contract is an integral part of or essential to the ability of Company to generate its *403 good, products or services.[3] (Emphasis added.)
The Prejean court found that the highlighted language inserted an impermissible and unlawful condition to relieve Murphy-Oil, the purported statutory employer, of its direct obligation to the injured worker because the contract did not confer the | Rbenefit to the worker of the unconditional right to immediately prosecute a claim against either the statutory employer or the direct employer. The court found that this language required the injured worker to prove that his direct employer was unable to pay him benefits before proceeding directly against Murphy Oil, the statutory employer. The court found that this language placed an onerous burden upon the injured worker to discover and prove the financial and/or other reasons a direct employer was “unable” to pay compensation benefits before proceeding against the statutory employer, a condition which disrupted the statutory scheme and would lead to lengthy litigation and the possible deprivation of medical care and weekly benefits to the employee. The Prejean court recognized, however, that contractual language that only modifies the obligations or regulates the rights and responsibilities among the obligors (the statutory and direct employers) as between themselves, but not towards the obligee, the injured worker, is permissible.
The contractual language at issue in the present case reads as follows:
ll.(a) Subcontractors shall protect, defend, indemnify and hold harmless Contractor ... against any and all claims, demands, losses, liabilities, costs, judgments, obligations and causes of action of every kind and character whatsoever related to or on account of bodily injury, death, property damage, or loss by whomever made, without limit and without regard to the cause or causes thereof of the negligence of any party or parties (including, but not limited to, the sole negligence or strict liability of contractor) incident to or in connection with this subcontract, whether arising out of performance of work or services hereunder or otherwise.[4]
There is nothing in this quoted contractual language that attempts to condition or otherwise limit the ability of an injured worker employed directly by the subcontractor (Cabal) to pursue a workers’ compensation remedy directly against the general contractor (Boh Bros.). The quoted language merely provides that Boh Bros, has a right of indemnification against Cabal in the event claims are made | flagainst Boh Bros., and thus is distinguishable from the language contained in the contract in Prejean. The quoted language comprises a regulation of the rights and obligations as between Cabal and Boh Bros, only, which case law, including Prejean, recognizes as permissible.
In his third assignment of error, which also concerns interpretation of the contract between Cabal and Boh Bros., plaintiff argues that the contract language quoted below purports to free Boh Bros, from any and all liability in any situation:
25. For the purposes of this Agreement, Contractor and Subcontractor jointly agree stipulate and recognize that the contractor shall be the statutory employer of any and all Subcontractor’s employees and/or all employees of any subcon *404 tractors ... while any of the above described persons are performing any work or providing any services under this agreement. Contractor and Subcontractor further stipulate, agree and recognize that all work performed under the Agreement between Contractor and Subcontractor further shall be considered part of the Contractor’s trade business or occupation and shall be specifically considered an integral part of or essential to the ability of the contractor to generate its goods, products or services. Contractor and Subcontractor further stipulate, agree and recognize that the services or work provided by any employee or subcontractor ... shall be deemed to be performing work or providing services which are an integral part of essential to the ability of Contractor to generate its goods, products and services.
Plaintiff cites the case of Smith v. Brown and Turner Industries Group, LLC, 01-1749 (La.App. 1 Cir. 8/15/12), 97 So.3d 1186, in support of his position, arguing that the court in Smith disapproved of similar contractual language. Plaintiffs reliance on Smith is misplaced. In Smith, the claimant, an employee of Formosa, received workers’ compensation benefits from his direct employer, Formosa, after being injured in a workplace accident at Formosa caused in part by the actions of Brown, the employee of a contract labor provider, Harmony. Smith sued Brown and Harmony in tort; Formosa and its workers’ compensation carrier intervened in the suit to recover, under the indemnity provision in the contract |inbetween Formosa and Turner relied upon by plaintiff here, all workers’ compensation benefits Formosa paid to Smith, Formosa’s own direct employee. Smith later voluntarily dismissed his claims against Brown and Harmony’s successor, Turner, with prejudice, leaving only the intervention claim outstanding. On Brown and Turner’s motion for summary judgment, the court granted the motion, dismissing Formosa’s intervention, finding the indemnity provision in the contract between Formosa and Turner against public policy, because if enforced under these facts, it shielded Formosa, the employer, from liability for workers’ compensation benefits to its own direct employee. Such is not the factual scenario before this Court in this case, nor is the contractual language at issue the same. In this case, plaintiff himself seeks a tort recovery against Boh Bros, by attempting to invalidate certain contractual provisions in the contract between his direct employer (Cabal) and Boh Bros., as noted above.
For the reasons stated above, we find no merit to plaintiffs first and third assignments of error.

SECOND ASSIGNMENT OF ERROR

Was plaintiff in the course and scope of his employment at the time of the accident in question?

Plaintiff next argues that specific language contained in the subject contract between Boh Bros, and Cabal restricted Boh Bros.’ immunity as a statutory employer to only those times while any of “the above described persons are performing any work or providing any services under this agreement.”[5] Plaintiff argues that at the time of the vehicular accident in which he was injured, he was not actually engaged in specifically performing the duties of a cement finisher or ^performing *405 any services under the agreement, and therefore Boh Bros, is not entitled to tort immunity under the contract.
Plaintiff essentially is making the argument that he was not in the course and scope of his employment at the time of his injury. As the court stated in Posey v. NOMAC Drilling Corp., 44,428 (La.App. 2 Cir. 8/12/09), 16 So.3d 1211, 1214:
An employee is entitled to compensation benefits if he receives a personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A); McLin v. Industrial Specialty Contractors, Inc., 02-1539 (La.7/2/03), 851 So.2d 1135. The requirement that an employee’s injury occur “in the course of’ employment focuses on the time and place relationship between the injury and the employment. McLin, supra; Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188. An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during work hours, either on the employers’ premises or at other places where employment activities take the employee. McLin, supra; Mundy v. Dept. of Health and Human Resources, 593 So.2d 346 (La.1992). The requirement that an employee’s injury “arise out of’ the employment relates to the character or origin of the injury suffered by the employee and whether this injury was incidental to the employment. McLin, supra; Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989).
In brief, plaintiff argues that the following factors show that he was not “performing work” as per the contract: (1) he was on a lunch break (or coming back from a lunch break); (2) he was not at a job site, but was instead in the back of a pickup truck returning from a lunch break; (3) he was not engaged in his work activity, i.e., digging ditches with a shovel in his hand; and (4) neither Cabal nor Boh Bros, was able to produce any documentation time-sheets indicating plaintiff was being paid at the time of the collision or even how many hours he was paid that day.
Plaintiff testified that on the day of the accident, he was working as a cement finisher. His crew was working on different sections of a particular runway at the airport. At some point, plaintiffs crew was called off to assist a Boh Bros, crew, but when they arrived at that particular location, the Boh Bros, crew was not ready 112for the Cabal crew. Accordingly, the Cabal crew, including plaintiff, took a lunch break on the airport premises.
Anthony Vicari, a supervisor with Cabal at the time of plaintiffs accident, testified that he supervised plaintiffs particular work crew and other Cabal crews on this project. Because the project had tight deadlines, Cabal personnel “badged-in” in the mornings and were paid for the full day, even for lunch breaks, until they “badged-out.” He described how some employees would eat while working, while at other times it would be possible for crews to take a small break; however while on the airport premises, the employees did not “badge-out” until the end of the work day.
At the time of plaintiffs accident, Mr. Vicari testified that plaintiff was “badged-in” and “on the clock.” According to plaintiff, he had finished his lunch, and then his supervisor directed the crew, including plaintiff, to load equipment into the truck so that they could use it to work at another section of the runway. Both plaintiff and other witnesses from Cabal and Boh Bros, testified that their cement finishing work required them to work the length of the runway, and that because the runways were long, rather than walk, the employ *406 ees often rode in pickup trucks when required to move from one section of the runway to another.
Plaintiff claims that the factual circumstances of his case are similar to the facts in Templet v. Intracoastal Track Line, Inc., 255 La. 193, 230 So.2d 74 (1969). In Templet, the claimant was trying to show entitlement to workers’ compensation benefits, unlike in the present case. The claimant in Templet, while driving a company vehicle, was struck as he was making a left turn into his employer’s premises to report for work. The Supreme Court on writs held that Mr. Templet was not in the course and scope of his employment because there was no “unusual”, “peculiar” or “greater” hazard to the employees of the defendant | lscompany than that faced by any motorist using public streets. Plaintiff argues that similarly, he faced the same hazards while riding in the back of the pick-up truck that a regular person would face while riding in a vehicle on the public streets.
Plaintiff misconstrues both the holding of Templet and the “arising out of’ component of workers’ compensation coverage. The focus of the “arising out of’ component is on the time and place relationship between the injury and the employment, not merely the cause of the injury, which in both Templet and this case was a vehicular accident. In this case, unlike in Tem-plet, plaintiff was not injured on a public street, but rather was “badged-in” at his workplace, the airport construction zone, was present at his worksite, the runway, an area that was not open to the public. Testimony from plaintiff and his supervisors clearly established that due to the large area of the runway worksite, the employees regularly rode in pickup trucks to get from one section of the runway to another in order to perform their particular tasks. Plaintiffs injury was clearly strongly related to his time and place of his employment.
Plaintiff next argues that he was not in the course and scope of his employment at the time of the accident. He argues that he was on his lunch break. The testimony clearly indicates otherwise. After they had eaten their lunches, plaintiff and his co-workers were told by the supervisor to load equipment into their truck, which they did, and to transport themselves and their equipment to another section of the runway in order to continue their work on the airport project, which they were in the process of doing when they were struck by the Boh Bros, vehicle. Thus, although plaintiff was not actually finishing cement at the time of the accident, he was performing services, ie., following the instructions of his supervisor, that were part of his employment duties. Thus, there is no merit to plaintiffs arguments in this regard.
| ^Further, plaintiffs arguments that Boh Bros, is not entitled to tort immunity because neither Cabal nor Boh Bros, introduced any documentation or timesheets indicating that plaintiff was being paid at the time of the collision, or even how many hours he was paid that day, are also without merit. Representatives of both Cabal and Boh Bros, testified without contradiction that plaintiff was “badged-in” at the time of the accident, had not “badged-out” at anytime prior to the accident, and was paid for his services the entire time he was “badged-in,” including at the time the accident in question occurred.
For the reasons stated above, we find no merit to plaintiffs second assignment of error.

CONCLUSION

For the reasons stated above, we find no merit to plaintiffs assignments of errors and affirm the judgment of the trial court *407 finding that Boh Bros, was plaintiffs statutory employer. Correspondingly, Lemic’s answer to this appeal is also denied.

AFFIRMED.

. The record reflects that this accident occurred in Jefferson Parish.

. The issue of whether plaintiff was in the course and scope of his employment at the time of his injury, relative to his tort claim against Boh Bros., was the subject of two motions for summary judgment filed by Boh Bros, at various times in the proceedings pri- or to trial on the merits. Both times, the trial court denied the motions, finding that there remained genuine issues of material fact in dispute. Both times, panels of this Court denied Boh Bros, writ applications seeking reversal of the trial court's judgments on said motions. Stewart v. Boh Bros. Construction Co., LLC, 09-768 (La.App. 5 Cir. 12/23/09), and 11-1016 (La.App. 5 Cir. 12/28/11) (unpublished writ dispositions).

. Prejean, 8 So.3d at 774-75.

. Section 12 of the contract requires Cabal to secure workers’ compensation insurance coverage for its direct employees.

. Cabral/Boh Bros. Contract, Section 25, quoted in full supra.